## Rothy's Quality Drugs, Inc., v. Tower's Marts, Inc.

*Morey M. Myers* and *Gelb, Carey & Myers*, for plaintiff.

*Nogi, O'Malley & Harris*, for defendant.

*Ronald M. Katzman* and *Carl Carey*, for amicus curiae.

HOBAN, P. J., April 4, 1961 — This action is brought by a retailer against another retailer, to restrain defendant from selling competitive trademarked items under fair trade prices established between the manufacturers and certain retailers in the Commonwealth of Pennsylvania.

The complaint sets forth the contracts in question, notice to plaintiff, a nonsigner, of the existence of such contracts, and specifies that defendant has advertised and continues to advertise the sale of such products at prices below the fair trade minimum prices established by such contracts, all to the great harm of plaintiff's business, good will and reputation.

The action is brought under the provisions of the Act of June 5, 1935, P. L. 266, as amended by the Act of June 12, 1941, P. L. 128, and the Act of May 25, 1956, P. L. 1756, 73 PS §7 et seq., generally known as the Fair Trade Act.

Defendant filed preliminary objections as follows:

1. The complaint fails to state a cause of action.

2. Plaintiff has no standing to enforce the provisions of the Fair Trade Act; accordingly it is not a proper party plaintiff.

3. If plaintiff is to be considered to have standing to enforce the act, then the act violates both the Constitution of Pennsylvania and the Constitution of the United States.

The Pennsylvania Pharmaceutical Association, a trade organization for the druggists of Pennsylvania, was permitted to intervene as amicus curiae, filed a brief and participated in the argument.

We are agreed that if plaintiff is a proper party to seek relief under the act, the complaint states a case. As noted above, it is specific as to the sales and continued offers by advertising of the competitive trademarked items in the regular course of defendant's business; and there is no doubt but that plaintiff as a nonsigner is bound to adhere to the minimum prices, at the risk of having enforcement suit brought against it. It is likewise clear that if plaintiff remains so bound and a competitor is not, serious damage may result to plaintiff's business by such unfair competition.

The title of the act reads as follows:

"To protect trade-mark owners, distributors, and the public against injuries and uneconomic practices in the distribution of articles of standard quality under a distinguished trade-mark, brand or name."

In Sinclair Refining Co. v. Schwartz, 398 Pa. 60, at page 63, the Supreme Court said:

"The purpose of the Act is to prevent predatory price-cutting and cutthroat competition, and to protect owners and public alike against unfair practices in the distribution of articles of standard quality under a distinguished brand or mark: [citing cases]."

In effect, what plaintiff charges here is that its "throat" is being "cut" by the unfair competition of a competitor likewise engaged in distribution of the trademarked articles, and that if plaintiff is held to be subject to the terms of the contract, even though a nonsigner, so should defendant, whether defendant is a signer or not, or by whatever means defendant obtained the articles which it now offers to the public.

The argument for defendant on the question as to whether or not plaintiff is a proper party is that plaintiff has not pleaded properly that it is a "buyer or purchaser of such commodity" under section 2 of the amending Act of 1941 which makes unfair competition as defined in the act actionable "at the suit of such vendor, buyer or purchaser of such commodity."

The act does not offer any definition of the words "buyer or purchaser," and defendant argues that "buyer or purchaser" should mean some person who is in direct contract relationship with the manufacturer or seller of the goods.

Plaintiff has not pleaded where it purchased the goods it offers in trade, but it is obvious that, as a dealer, it must have purchased them from some place, and it does not seem to us to make any great difference as to where it bought them if in fact it is required to sell them, by virtue of the provisions of the act, at not less than the minimum price prescribed in contracts to which it may not have been a contracting party but which bind it just the same.

We are not concerned at this point with possible defenses to the action which might relieve defendant from responsibility; but the general intent of the act is perfectly clear, as stated in Sinclair Refining Co. v. Schwartz, supra, "to prevent predatory price-cutting and cutthroat competition." Such predatory price-cutting and cutthroat competition may just as well exist between retailers as between producers, wholesalers or jobbers, and it is to the interest of the public to prevent such ruinous competition.

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature": Statutory Construction Act of May 28, 1937, P. L. 1019, art IV, sec. 51, 46 PS §551.

We think the intention of the legislature is quite clear and that any buyer or purchaser who is harmed

by violation of the act has a right to invoke its provisions, no matter from whom he buys or purchases.

The Fair Trade Act has been held constitutional as a valid exercise of the police power: Bristol-Myers Co. v. Lit Bros., Inc., 336 Pa. 81; Burche Co. v. General Elec. Co., 382 Pa. 370.

The police power is an exercise of the sovereign's prerogative to protect the health, safety and welfare of the people as a whole.

If we understand the position of defendant correctly on the constitutional question, it is that, while the act of the legislature may be held to be generally constitutional, in its application to a particular situation it may be unconstitutional as violating a specific constitutional provision. Apparently, defendant's theory is that if we allow a retailer to enforce the act as against another retailer, this amounts to an unlawful delegation to the retailer to fix prices. But in Burche Co. v. General Elec. Co., supra, at page 374, the Supreme Court expressly rejected the contention: "Nor is this Act an unlawful delegation of legislative power. In fact, it is not a delegation of power at all: [Citing cases.]"

We are not disposed to flyspeck an act which has been generally upheld as an exercise of the police power in the public interest and for the common good, for obscure constitutional impediments.

So far as we are concerned, the issue is decided by Burche, and we see nothing to the contrary in Gulf Oil Corporation v. Mays, 401 Pa. 413. In that case, the opinion writer simply suggested that before the equity arm may exercise its power of restraint, the proofs must bring the factual situation into strict compliance with the act before relief may be afforded.

We are of the belief that this case ought not to be decided on preliminary objections. Accordingly, the

objections will be dismissed. When the factual situation is completely developed, it may be that plaintiff's right to proceed may again be called in question and that under the complete statement of facts the exercise of the police power may not be warranted. Accordingly, the objections will be overruled without prejudice to the right of defendant to renew the objections to the propriety of plaintiff as a party and to the constitutionality of the application of the act in the developed factual situation.

Now, April 14, 1961, the preliminary objections are dismissed without prejudice to defendant's right to raise the issue of proper parties or constitutionality of the application of the act, after the factual situation is developed completely either on the pleadings or after trial.